**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| TERRIE R. SPONCEY, | 3:10-cv-00478-ECR-WGC |
| Plaintiff, | |
| vs. | **Order** |
| BANNER-CHURCHILL HOSPITAL, LAURA CARTER, DEBBIE TABBERT, DIANE PETERS, CLAIRE BEHEIMER, KATHY VALENTINE and DOES I-X AND ABC CORPORATIONS I-V, | |
| Defendants. | |

This case arises from an employment dispute. Now pending is the Motion to Dismiss (#38) Plaintiff Terrie R. Sponcey's ("Plaintiff") Second Amended Complaint (#37) by Defendants Banner-Churchill Hospital, Laura Carter, Debbie Tabbert, Diane Peters, Claire Beheimer, Kathy Valentine.

The motion is ripe, and we now rule on it.

### I. Factual and Procedural Background

The facts as alleged by Plaintiff are as follows. Plaintiff was employed as an emergency room nurse for defendant Banner-Churchill Hospital ("Banner") from 1991-2007. (Pl.'s Second Am. Compl. ¶ 14 (#37).) Prior to 2006, Plaintiff had always received average to above-average evaluations and received several

performance awards. (Id.)  In January 2006, Plaintiff informed her employer, Banner, that she had begun testing for Hairy Cell Leukemia and a chronically low white blood cell count. (Id. ¶ 12.) Plaintiff's direct supervisor, defendant Laura Carter, was notified of Plaintiff's testing and that Plaintiff would require ongoing testing to determine if she had leukemia. (Id.)  Carter requested that Plaintiff schedule her testing on her days off as much as possible to accommodate the hospital's staff shortage. (Id.)

In July 2006, Plaintiff was scheduled for several medical testing procedures of which Laura Carter was informed. (Id. ¶ 15.) Carter told Plaintiff that she did not need to be placed on medical leave under the Family and Medical Leave Act ("FMLA") and that she was to use her accrued paid time off for any leave from work. (Id.)    Plaintiff returned to work after her tests and confided to Laura Carter that she feared she may have cancer and was experiencing low energy levels. (Id. ¶ 17.)  Laura Carter informed Plaintiff that various staff members were complaining about the number of patients Carter was seeing in comparison to other nurses but assured her that she did not need to worry about her job or the other nurses. (Id.)  Around this time, Plaintiff heard her co-workers, including defendant Debbie Tabbert, discussing confidential information concerning the information contained in her personal medical file and lab results. (Id. ¶ 18.)  Plaintiff was repeatedly asked and harassed about her condition, and her confidential details were discussed in front of patients, family, and other staff. (Id.) Plaintiff contacted the hospital compliance line in July and September of 2006 and filed a complaint regarding

2

the foregoing harassment and confidentiality violations.  (Id. ¶ 19.)

Following the results from one of her medical tests, Plaintiff's doctor ordered a procedure for July 31, 2006, which was a scheduled work day for Plaintiff.  (Id. ¶ 22.)  Plaintiff informed Clare Beheimer, who was covering for supervisor Laura Carter while she was away.  (Id.)  Beheimer told her to contact the benefits office and the appropriate staff members to inform them of her absence.  (Id.)  Plaintiff was informed by Banner Benefits that she was entitled to FMLA for her scheduled procedure as well as for the other procedures she had used paid time off to cover.  (Id. ¶ 23.)  Banner Benefits stated they would send an e-mail to Laura Carter asking her to reimburse Plaintiff's paid time off under FMLA.  (Id.)

Plaintiff was to undergo a bowel cleansing the day before her July 31st procedure that would cause her to be in the bathroom every 10 minutes.  (Id.)  Plaintiff was informed by defendant Debbie Tabbert that Tabbert, who was apparently in charge of staffing for that shift, could not find anyone to work her shift on July 30 and that Plaintiff had to work but could leave early if it was slow enough.  (Id. ¶ 25.)  Plaintiff stayed until she was no longer able to work due to frequent trips to the bathroom.  (Id.)

Plaintiff later learned that several days following her medical procedure, defendants Tabbert and Beheimer were overheard discussing Plaintiff's request for time off and other personal medical issues with staff members.  (Id. ¶ 26.)  Plaintiff filed a complaint with a Banner Compliance Officer for Tabbert and

3

Beheimer's violation of the Health Insurance Portability and Accountability Act as well as other confidentiality violations. (Id. ¶ 31.)  The officer investigated the matter and informed Plaintiff that no violations had been committed.  (Id.)

On September 1, 2006, Plaintiff was called into Human Resources and issued a written reprimand by defendants Laura Carter and Diane Peters.  (Id. ¶¶ 33-35.)  Plaintiff was informed that she was being subjected to a new "evaluation tool" that had not been used on her in the history of her employment at Banner.  (Id. ¶¶ 15, 34.)  The number of patients cared for by Plaintiff was to be compared to that of those cared for by other nurses.  (Id. ¶ 15.)  It is unclear whether the other nurses were subjected to a similar evaluation standard.  Plaintiff was informed that her numbers had been below average between the period of July 16 to August 14, 2006.  (Id. ¶ 34.)  Plaintiff was given two weeks to improve her "numbers."  (Id. ¶ 36.)

Plaintiff filed a complaint with the Banner Affirmative Action department and was called into the administration office on September 11, 2006 and offered formal apologies from defendants Diane Peters, Clare Beheimer, and Laura Carter.  (Id. ¶¶ 37, 40.)  Peters, Beheimer, and Carter indicated that they were willing to accommodate Plaintiff's health issues if she let them know what she needed.  (Id. ¶ 20.)  Plaintiff's written reprimand remained in her file, though she was told not to worry about it.  (Id.)

In the following days, Plaintiff was informed by co-workers of various details that had come from her confidential meeting in Human Resources.  (Id. ¶ 44.)  Comments regarding confidential

4

information and general harassment about Plaintiff's work continued, particularly from defendants Laura Carter and Debbie Tabbert. (Id.)  Around this time as well as during later dates prior to her termination, Plaintiff requested to adjust her schedule to begin at a later time, as she was struggling with low energy levels and insomnia due to her illness. (Id. ¶ 49.)  Her request was eventually denied by Laura Carter, who stated that she had discussed the issue with Clare Beheimer and Diane Peters and decided that such an accommodation would appear to be favoritism and "piss [the employees] off more than [Plaintiff] already had." (Id. ¶ 50.)

During the period of mid-November to late December 2006, Plaintiff took leave from work for a medical procedure that would take several weeks for recovery. (Id. ¶¶ 46, 51.)  Defendants Laura Carter, Diane Peters, and Clare Beheimer were informed of her absence and the reason for it. (Id. ¶ 51.)  Plaintiff's leave was covered under FMLA. (Id.)

Plaintiff discovered in the beginning of January 2007 that Laura Carter, Debbie Tabbert, and others had discussed her medical leave and her medical condition with other coworkers. (Id. ¶ 52.)  The tone of at least one of Laura Carter's interactions regarding Plaintiff was described as "very hateful." (Id.)

In mid-January, Plaintiff was asked by Laura Carter to "precept" nursing students for two of days a week for several hours each day. (Id. ¶ 53.)  Plaintiff expressed concern about the impact such a responsibility would have on her "numbers" and any subsequent evaluations, but Laura Carter told her that it was not

5

an issue.  (Id.)  Plaintiff took on the students until April 2007.  (Id.)

On May 2, 2007, Plaintiff was given a written reprimand for her decreased patient load as compared to her co-workers.  (Id. ¶ 56.)  Laura Carter, Clare Beheimer, and Diane Peters informed Plaintiff that she needed to go home and write up an "action plan" to fix her workload problem and that if she failed to sign the written reprimand, she would be unable to draft the action plan and would be terminated.  (Id.)  Plaintiff was sent home for the day, and defendants Carter, Beheimer, and Peters intimated to her that she could leave her job "through the backdoor" if she so desired.  (Id. ¶ 57.)  Plaintiff refused that offer and went home for the day.  (Id.)

Plaintiff complained to Banner's corporate office about her written reprimand.  (Id. ¶ 60.)  She was directed to defendant Kathy Valentine, who directed her to a three step grievance process outlined in Banner's employee handbook.  (Id. ¶¶ 61-62.)  Following Valentine's instructions, Plaintiff approached Diane Peters requesting the papers required for beginning the three step process.  (Id. ¶ 63.)  Peters stated that she would give Plaintiff the papers when she had time.  (Id.)

On May 14, Plaintiff initiated the three step process.  (Id. ¶ 65.)  She stated her grievances with the appropriate authorities, (Id. ¶ 66), but was unable to complete the three step process due to insufficient information and difficulty contacting one of the appropriate authorities for the third step.  (Id. ¶¶ 67-69.)

6

On July 25, 2007, Plaintiff was brought into Human Resources with Laura Carter and Diane Peters who informed her that she was being terminated for failure to satisfactorily increase her patient load. (Id. ¶ 70.)  Several days later, Plaintiff received her termination paperwork in the mail. (Id. ¶ 73.)

Plaintiff initiated a complaint regarding the employment violations of Defendants with the Equal Employment Opportunity Commission ("EEOC") and the Nevada Equal Rights Commission ("NERC") in February 2008 but did not file a formal charge until May 27, 2008. (Pl.'s First Opp'n Ex. "3" (#26).)  Plaintiff also filed a complaint in April 2008 with the Department of Labor regarding Defendants' FMLA violations. (Pl.'s Second Am. Compl. ¶ 83 (#37).)

Plaintiff filed her initial Complaint (#1) on August 2, 2010. Plaintiff filed an Amended Complaint (#4) on October 4, 2010. Defendants filed a Motion to Dismiss (#21) Plaintiff's Amended Complaint on December 22, 2010.  Plaintiff filed her Response to the motion (#26) on January 31, 2011, and Defendants filed their Reply (#29) on February 10, 2011.  On August 12, 2011, this Court granted Defendants' Motion to Dismiss (#30).

Plaintiff filed her Second Amended Complaint (#37) on September 22, 2011, alleging (1) violation of the ADA, (2) violation of the FMLA, (3) violation of Plaintiff's right to privacy, and (4) breach of contract. Defendants filed a Motion to Dismiss (#38) Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), and lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1).  Plaintiff filed her Response (#41) to Defendants' Motion

to Dismiss on November 1, 2011.  Defendants filed their reply (#43) on November 14, 2011.

On November 2, 2011, Plaintiff filed a Motion for Hearing (#42) on the Motion to Dismiss (#38).  No responses were filed.

## II. Legal Standard

### A. Rule 12(b)(6) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (clarifying that Twombly applies to pleadings in "all civil actions").  On a motion to dismiss, except where a heightened pleading standard applies, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)) (alteration in original); see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) (noting that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (internal quotation marks omitted).  Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." In re Stac Elecs., 89 F.3d at 1403 (citation omitted).

Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is normally limited to the complaint itself. See Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. FED. R. CIV. P. 12(d); see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment." Ritchie, 342 F.3d at 908.

If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." Lee, 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." Ritchie, 342 F.3d at 908. Finally, if

9

adjudicative facts or matters of public record meet the requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to dismiss.  Id. at 909; see FED. R. EVID. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### III. Discussion

**A. Plaintiff's Retaliation, Discrimination, and Failure to Accommodate Claims under the Americans with Disabilities Act.**

Plaintiff seeks relief under the ADA against Banner and Banner employees for failure to accommodate, discrimination, and retaliation.  (Pl.'s Second Am. Compl. ¶¶ 75-78 (#38).)  However, Plaintiff fails to allege which actions from which defendants are violations of the ADA.  Moreover, plaintiff cites no specific sections, provisions, or language from the ADA.  Nor does Plaintiff explain what qualifies her as a "disabled person" for purposes of the ADA.  See 42 U.S.C. § 12111(8).  Finally, she fails to specifically allege any of the three elements traditionally required to bring an ADA claim.  See Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir.) (restating the three traditional elements as (1) that plaintiff is a disabled person within the meaning of the ADA; (2) that plaintiff, with or without reasonable accommodation, is able to perform the essential functions of the

10

job; and (3) that the plaintiff was terminated because of her disability).

In the event that Plaintiff attempts once more to bring a sufficient pleading seeking relief under the ADA, it is worth discussing Defendants' contentions with regard to the timeliness of Plaintiff's ADA claims. (Defs.' Mot. to Dismiss (#38).) Before a plaintiff can bring suit for relief under the ADA, she must first exhaust her administrative remedies by filing a charge with the EEOC within the appropriate time window. Metts v. University of Nevada-Reno, 301 F. Supp.2d 1247, 1249 (D. Nev. 2004). A plaintiff must file her EEOC charge within 180 days of the alleged harm unless she initiates proceedings with an authorized state agency (in Nevada, the NERC), in which case she has 300 days to file. 42 U.S.C. § 2000e-5(e)(1); Martin v. Nevada Employment Security Division, 99 Fed. Appx. 832, 833 (9th Cir. 2004).

Because Plaintiff filed her complaint with the NERC, she is entitled to the 300 day window. (Pl.'s Second Am. Compl. ¶ 79 (#38).) However, plaintiff's termination, the final alleged act of retaliation by Defendants, occurred on July 25, 2007. (Id. ¶ 70.) "Continued non-employment is not itself a discreet act of discrimination." Alexander v. San Diego Unified School Dist., No. 08-CV-01814 JLS (POR), 2009 WL 3299813, at *5 (S.D. California Oct. 13, 2009) (citing Olsen v. Idaho State Bd. Of Med., 363 F.3d 916, 926 (9th Cir. 2004). Plaintiff did not file a formal Charge of Discrimination with the NERC until May 27, 2008, 307 days after her termination. (Pl.'s First Opp'n Ex. "3" (#26).)

11


Plaintiff argues that her interactions and documentation with the NERC predating the final Charge of Discrimination should be considered in determining whether she was within the 300 day window, (Pl.'s Opp'n to Def's Mot. to Dismiss Pl.'s Second Am. Compl. (#41).). By regulation, the "charge" required under 42 U.S.C. § 2000e-5(e)(1) requires only that a document be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). See also Clark v. Coats & Clark, Inc., 865 F.2d 1237, 1241 (11th Cir.) (finding that a document constitutes a charge with the EEOC for Age Discrimination in Employment Act claims as long as it sufficiently identifies the defendant and describes the discriminatory action); Rayburn v. City of Corpus Christi, (S.D. Tex. 2006) (finding that an "Intake Form" and a "Sequence of Events" document, neither of which were formal charges, were sufficient to constitute a "charge" for a Title VII claim with the EEOC). A formal charge with the EEOC or NERC is therefore not required as long as earlier complaint documents sufficiently identify the parties and the actions complained of.

Plaintiff alleges that she initially complained with the NERC and EEOC in February 2008 but provides no direct documentation of her complaints. (Pl.'s Second Am. Compl. ¶ 79 (#37).) She attaches a letter from NERC, dated May 20, 2008, that refers to her initial complaint and attaches a charge written by Plaintiff for her to sign. (Pl.'s Opp'n to Def.'s Mot. to Dismiss Ex. "3" (#26).) However, the attached "Charge of Discrimination," signed and dated May 27th, 2008, appears to be Plaintiff's final charge.

(Id.)  While the "Charge of Discrimination" document does sufficiently identify the parties and actions for which Plaintiff seeks relief, there is no indication in the NERC letter or in the "Charge of Discrimination" of when the initial complaint was made. In order to sufficiently allege that she filed a valid charge before the 300 day time window, Plaintiff must attach some documentation showing her initial complaint and confirming the date on which it was brought to the NERC.  29 C.F.R. § 1601.12(b).  As it stands, Plaintiff has failed to sufficiently allege that she tolled statute of limitations within the prescribed 300 day time window.

With no discussion of specific allegations, legal elements, or statutory provisions regarding her ADA claims, this court cannot say that Plaintiff has stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Additionally, Plaintiff has failed to sufficiently allege that she filed a timely complaint with the NERC and EEOC.  Accordingly, Plaintiff's ADA claim is dismissed without prejudice.  If Plaintiff fails to sufficiently allege the applicable legal elements of her ADA claim, further amendments will be deemed futile and her entire ADA claim will be dismissed with prejudice.

**B. Plaintiff's Claims that Defendants Violated the Family Medical Leave Act**

Plaintiff further seeks relief for alleged violations of the FMLA by Banner and its employees.  (Pl.'s Second Am. Compl. ¶¶ 81-84 (#37).)  While plaintiff fails to allege any specific violations of FMLA provisions, this court need not rule on those deficiencies

13

as Plaintiff is time barred from bringing her FMLA claims. Actions for FMLA violations must be brought within two years of the last alleged violation or within three years if the violations are willful. 29 U.S.C. § 2617(c)(1)-(2). Plaintiff was terminated on July 25, 2007, (Pl.'s Second Am. Compl. ¶ 70 (#37)), and did not file her complaint until August 2, 2010, (Pl.'s Compl. (#1)), placing her outside of the FMLA's statute of limitations for both general and willful violations.

Plaintiff states that she filed an FMLA complaint with the Department of Labor "in or around April 2008," (Pl.'s Second Am. Compl. ¶ 83 (#37)), but this action is immaterial. Administrative remedies where a plaintiff is not required to exhaust her administrative remedies before bringing an action before a court do not toll the statute of limitations.[1] See Conley v. International Broth. of Elec. Workers, Local 639, 810 F.2d 913, 915 (9th Cir. 1987) (holding that an unfair labor practice charge filed with the National Labor Relations Board does not toll the statute of limitations for court based relief and stating that "[e]quitable tolling is most appropriate when the plaintiff is required to avail himself of an alternate course of action as a precondition to filing suit."). The FMLA provides for direct relief without

---

[1] Recent California case law sets forth a doctrine of equitable tolling that allows the running of the limitations period to toll after a plaintiff seeks administrative relief in cases where a plaintiff is not required to exhaust other administrative remedies before seeking court based relief. Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1136 (9th Cir. 2001). However, cases involving federal statutes in both California and Nevada have rejected this form of equitable tolling. See, e.g., Conley, 810 F.2d at 915; Obiajulu v. Rite Aid Corp., No. 2:04-CV-01520 BESLRL., 2006 WL 1687410, at *4 (D. Nev. June 15, 2006); Green v. Bastyr University, L.L.C., 295 Fed. Appx. 128, 129 (9th Cir. 2008). Plaintiff makes no other legally cognizable claim for equitable tolling.

requiring plaintiffs to exhaust other forms of relief.  29 U.S.C. § 2617(a)(1).  The statute of limitations therefore had run by the time Plaintiff brought her complaint on August 2, 2010, more than three years after her termination.  Plaintiff is thus time barred from pursuing her FMLA claims, and her claims are dismissed with prejudice.

**C. Plaintiff's Claims that Defendants Violated Her Right to Privacy**

Plaintiff alleges violations of her right to privacy by some of the defendants, though she fails to mention which defendants are liable and presents none of the requisite elements for asserting a right to privacy violation.  (Pl.'s Second Am. Compl. ¶¶ 85-87 (#37).)  Again, while Plaintiff's complaint is likely fatally deficient, the issue is immaterial as she is time barred from pursuing her right to privacy claims.

Nevada case law recognizes the "right to privacy" as a cause of action that can be divided into four separate torts: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the name or likeness of another; (3) unreasonable publicity given to private facts; and (4) publicity unreasonably placing another in a false light before the public. People for Ethical Treatment of Animals v. Bobby Berosini, Ltd., 111 Nev. 615, 629, 895 P.2d 1269, 1278 (Nev. S. Ct. 1995).  Under Nevada statute, causes of action in tort are subject to a two year statute of limitations.  Nev. Rev. Stat. § 11.190(e)-(f); see also Turner v. County of Washoe, 759 F. Supp. 630, 637 (D. Nev. 1991) (subjecting an "invasion of privacy" claim to a 2 year statute of limitations

15

under Nevada statute). The last potential violation of Plaintiff's right to privacy occurred on the date of her termination, July 25, 2007, when a Banner employee followed her to a tire shop. (Pl.'s Second Am. Compl. ¶ 72 (#37).) Plaintiff did not bring any privacy claims until she brought her initial complaint before this court on August 2, 2010, well over two years after her final alleged injury. (Pl.'s Compl. (#1).) Plaintiff's privacy claims are therefore time barred and dismissed with prejudice.

### D. Plaintiff's Claims that Defendants are in Breach of a Contract Between Herself and Banner-Churchill Hospital

Plaintiff claims that "each" defendant is "in direct breach of written employment provisions that constitute a contract at law." (Pl.'s Second Am. Compl. ¶ 89 (#37).) She relies on Banner's employee handbook to allege that each defendant "breached each and every level of the complaint process in numerous ways." (Id.) However, Plaintiff fails to attach the employee handbook to her complaint or even describe its applicable provisions. Plaintiff's bald statement that a contract existed between her and Defendant Banner without providing or even describing adequate documentation is a "legal conclusion[] . . . cast in the form of factual allegations." Watt, 643 F.2d at 624. This court simply cannot find anything in Plaintiff's contract claims beyond "[c]onclusory allegations and unwarranted inferences." In re Stac Elecs., 89 F.3d at 1403 (citation omitted).

Plaintiff attaches a page from the Banner employee handbook to her Opposition to Defendants' Motion to Dismiss. (Pl.'s Opp'n to Defs.' Mot. to Dismiss Ex. "4" (#41).) However, "[p]laintiffs

16

cannot rectify their pleading deficiencies by asserting new facts in an opposition to a motion to dismiss." <u>Smith v. Pizza Hut, Inc.</u>, 694 F. Supp.2d 1227, 1230 (D. Colo. 2010) (citing <u>Perkins v. Silverstein</u>, 939 F.2d 463, 471 (7th Cir.1991)).  Nor is it plausible that the single page of Banner's employee handbook attached by Plaintiff establishes the existence of a contract between Plaintiff and Banner.  The excerpt merely lays out the three step process discussed by Plaintiff in her Second Amended Complaint without any indication of the contractual relationship between Plaintiff and Banner.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss Ex. "4" (#41).)  Plaintiff's contract claim is dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.

### IV. Conclusion

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants' Motion to Dismiss (#38) is **GRANTED** on the following basis. Plaintiff's first cause of action against Defendants for violation of the ADA is **DISMISSED** without prejudice.  Plaintiff's second cause of action against Defendants for violation of the FMLA is **DISMISSED WITH PREJUDICE**. Plaintiff's third cause of action against Defendants for violation of her right to privacy is **DISMISSED WITH PREJUDICE**. Plaintiff's fourth cause of action against Defendants for breach of contract is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Hearing (#42) on the Motion to Dismiss (#38) is **DENIED** as moot.

17

**IT IS FURTHER ORDERED** that Plaintiff shall have twenty-one (21) days within which to file an amended complaint. While the Court considered dismissing all claims with prejudice because Plaintiff has previously been given leave to amend, we shall give Plaintiff an opportunity to file another complaint because there is some question as to whether Plaintiff may bring claims sufficient to survive a motion to dismiss. If Plaintiff fails to cure the deficiencies noted in this Order, namely, the statute of limitations issue for the ADA claim, and the specificity needed to allege causes of action under the ADA and for breach of contract, no further amendments shall be allowed and the action will be dismissed with prejudice.

DATED: June 29, 2012.

_____
UNITED STATES DISTRICT JUDGE